Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Kentucky

London Division

|  |  |  |
|---|---|---|
| | ) | Case No.   6:26-CV-094-GFVT |
| | ) | *(to be filled in by the Clerk's Office)* |
| **Sherry Lavon Polly** | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)*   ☐ Yes   ☒ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| "see attached 2 sheets" | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names. Do not include addresses here.)* | | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non–Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Sherry Lavon Polly |
| Address | P.O. Box 153 |
| | Dorton      KY      41520 |
| | *City*      *State*      *Zip Code* |
| County | Pike County |
| Telephone Number | 606-831-1298 |
| E-Mail Address | SherryLavonPolly@Outlook.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Kentucky State Police |
| Job or Title *(if known)* | Kentucky State Trooper Agency |
| Address | 919 Versailles Road |
| | Frankfort      KY      40601 |
| | *City*      *State*      *Zip Code* |
| County | Franklin |
| Telephone Number | 502-782-1800 |
| E-Mail Address *(if known)* | unknown |

☐ Individual capacity    ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | KSP Trooper Cameron Whittaker |
| Job or Title *(if known)* | Kentucky State Trooper, Badge #395 |
| Address | 3499 North Mayo Trail |
| | Pikeville      KY      41501 |
| | *City*      *State*      *Zip Code* |
| County | Pike |
| Telephone Number | 606-433-7711 |
| E-Mail Address *(if known)* | unknown |

☒ Individual capacity    ☒ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Pikeville Detention Center |
| Job or Title *(if known)* | Pike County Jail |
| Address | 172 Division Street |

| Pikeville | KY | 41501 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Pike |
| Telephone Number | 606-432-6292 |
| E-Mail Address *(if known)* | unknown |

☐ Individual capacity    ☒ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Pike County District Court, Division I |
| Job or Title *(if known)* | Pike County Courts |
| Address | 172 Division Street |

| Pikeville | KY | 41502 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Pike |
| Telephone Number | unknown |
| E-Mail Address *(if known)* | unknown |

☐ Individual capacity    ☒ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

This court has jurisdiction under 28 U.S.C. 1331, 28 U.S.C. 1343, because the action arises under federal law, including 42 U.S.C. 1983 and 42 U.S.C. 1985 (3). Plaintiff alleges violatons of rights protected by the First, Second, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

C.      Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.      Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Each defendant acted under color of state law by using their official authority, position, badge, uniform, or governmental power to carry out the actions described in this complaint. The Kentucky State Police officers acted while performing police duties; Pikeville Detention Center staff acted while performing jail functions; Pike County District Cout judges, clerks, prosecutors, and public defenders acted while performing court-related functions; and other defendants acted jointly with or in coordination with state officials. Their actions were taken through state authority and resulted in the deprivation of Plaintiff's constitituional rights.

## III.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.      Where did the events giving rise to your claim(s) occur?

Multiple locations including:
1. Elkhorn City Exit on US 805 East and US 197 North intersection, Dorton Jenkins Hwy, Jenkins KY, 41537
2. US 805 East and Big Shelby Creek Road intersection, Dorton Jenkins Hwy, Jenkins, Ky. 41537
3. Pikeville Detention Center, 172 Division Street, Pikeville, KY. 41501
4. Pike County District Courts Div I. and II., 172 Division Street, Pikeville, KY. 41501
5. Pikeville District Court Clerk, 110 Main Street, Pikeville, KY. 41501
6. On or about this location: -Main Street and Cricket Alley., Pikeville KY. 41501 -Main Street and Caroline Ave., Pikeville, KY. 41501 -Main Street and Grace, Pikeville, KY. 41501 -Main Street and Division St., Pikeville, KY. 41501
7. 4771 Dorton Jenkins Hwy, Jenkins, KY. 41537

B.      What date and approximate time did the events giving rise to your claim(s) occur?

"see attachd sheet 1

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

C.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

" See attached 7 sheets "

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

As a direct and proximate result of the Defendants' actions, I have suffered the following injuries:
-Fear for mine and my children's safety and well-being, including the constant concern that they may be subjected to similar harm or retaliation if I pursue legal action or speak out.
-Loss of personal security and peace of mind, as I no longer feel safe in my home, in public, or while traveling. I live in constant fear that I will have to fight to defend nyself and feel I must remain on guard at all times.
-Severe emotional distress and anxiety.
-Social isolation and disruption of daily life, as I am forced to avoid normal activities and interactions out of fear of targeted harassment, and retaliation. This includes planning around safety rather than engaging in ordinary routines.
-Harassment and mistreatment in public and private settings, including being treated differently by members of the community, and enduring gossip that has damaged my reputation.
-Damage to personal relationships, resulting in loss of trust and inability to confide in family and friends due to disbelief and stigma caused by the Defendants' actions.
-Ongoing fear of future harm, as I believe these actions will continue because the Defendants operate under the assumption that no one will believe me, and will eventually harm me again.

## V.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

-Plaintiff respectfully requests the following relief:

-Grand injunctive relief to prevent further harassment, retalitation, or unlawful actions against Plaintiff.

Award compensatory damages of $100,000.00 per defendant for emotional distress, psychological harm, loss of enjoyment of life, and disruption to daily living caused by Defendants' actions.

-Award punitive damages of $100,000,000.00 to punish Defendants for willful and malicious conduct and to deter similar actions in the future.

-Provide any other relief the Court finds fair and appropriate.

-Plaintiff respectively requests that this matter be tried before the Court in a bench trial pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure. Plaintiff does not demand a jury trial.

Basis for these claims:

The requested amounts reflect the severity of emotional and psychological harm, the ongoing fear for personal and family safety, and the intentional nature of Defendants' actions, which caused lasting damage to Plaintiff's well-being, and relationships.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    2-17-26

Signature of Plaintiff    *Sherry Lawn Polly*

Printed Name of Plaintiff    Sherry Lawn Polly

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Address

|  | *City* | *State* | *Zip Code* |

Telephone Number

E-mail Address

**Defendant List: Additional sheet page 1**

Defendant: No. 5
Name: Pike Co. Dist. Court Div. II
Job/Title: Pike County Courts
Address: 172 Division St.
State: KY
City: Pikeville
Zip: 41501
Phone: Unknown
Email: Unknown
Individual:          Official: X

Defendant: No. 6
Name: Pike County District Court Clerk
Job/Title: Pike Co. Court Clerk
Address: 146 Main Street
City: Pikeville
State: KY
Zip: 41501
Phone: Unknown
Email: Unknown
Individual:          Official: X

Defendant: No. 7
Name: Unknown (2)
Job/Title: staff Pikeville Detention Center
Address: 172 Division Street
City: Pikeville
State: KY
Zip: 41537
Phone: (606)-432-6291
Email: Unknown
Individual: X      Official: X

Defendant: No. 8
Name: Unknown(1)
Job/Title: Kentucky State Trooper
Address: 3499 North Mayo Trail,
City: Pikeville
State: Ky
Zip: 41501
Phone: (606)-433-7711
Email: Unknown
Individual: X      Official: X

Defendant: No. 9
Name: Gladys Bentley
Job/Title: unknown
Address: 30 Big Shelby Creek Rd.
City: Jenkins
State: KY
Zip: 41537
Phone: Unknown
Email: Unknown
Individual: X      Official:

Defendant: No. 10
Name: Ms. Bentley (maiden)
Job/Title: unknown
Address: 50 Big Shelby Creek Rd.
City: Jenkins
State: KY
Zip: 41537
Phone: unknown
Email: unknown
Individual: X      Official:

Defendant: No. 11
Name: Ms. Bentley (maiden)
Job/Title: unknown
Address: 30 Big Shelby Creek Rd.
City: Jenkins
State: Ky
Zip: 41537
Phone: unknown
Email: unknown
Individual: X      Official:

Defendant: No. 12
Name: KSP Trooper Culbertson
Job/Title: Kentucky State Police Trooper, Post #09
Address: 3499 North Mayo Trail
City: Pikeville
State: KY
Zip: 41501
Phone: (606)-433-7711
Email: unknown
Individual: X      Official: X

**Defendant List: Additional Sheet page 2**

Defendant: No. 13
Name: Ronald Vipperman
Job/Title: unknown
Address: 230 and/or 266 Big Shelby Creek Rd.
City: Jenkins
State: KY
Zip: 41537
Phone: unknown
Email: unknown
Individual: X        Official:

Defendant: No. 14
Name: Cody Bentley
Job/Title: Truck Driver for Bob Bentley Trucking
Address: 6636 KY Highway 610 W,
City: Jenkins
State: KY
Zip: 41537
Phone: (606)- 639-9005
Email: unknown
Individual: X        Official:

Defendant: No. 15
Name: Bob Bentley
Job/Title: Truck Driver/ Bob Bentley Trucking
Address: 6636 KY Highway 610 W
City: Jenkins
State: KY
Zip: 41537
Phone: (606)-639-9005
Email: Unknown
Individual: X        Official:

Defendant: No. 16
Name: (unknown) (3)
Job/Title: Kentucky State Police Trooper
Address: 3499 North Mayo Trail
City: Pikeville
State: KY
Zip: 41501
Phone: (606)- 433-7711
Email: unknown
Individual: X        Official: X

**Statement of Claim:**

**B.**

Attached Sheet: Dates and Times

Multiple incidents are as follows:
1.October 12th, 2024, approximately 6:00 p.m. 6:16pm, 7:00 p.m. - Oct 13, 12:00 a.m.

2. December 17th, 2024, approximately 9:00am

3. March 5th, 2025, approximately 9:00 a.m.

4. Dec 17th, 2024-Oct 17th, 2025, (one of these dates; exact date unknown), approx. (time from receipt)

5.  On or about June or July or Aug 2025 (exact date unknown)

6. August 26th, 2025, appx 4;47 p.m. and 5:21 p.m.

7. October 14th, 2024,

8. October 17th, 2025

8. On or about October 21st, or 22nd 2025, approximately 1:00pm thru 4:00pm

10. October 24th, 2025,

11. Oct 29th, 2025,

12. November 7th, 2025,

13. November 8th, 2025, at 3:00pm

14. December 1st, 2025, at 4:25pm, 5:55pm thru 12:00am

15. December 2nd, 2025, at 12:04 a.m. to 12:35 a.m.

# Statement of Claim C.

BACKGROUND HISTORY

2005 Incident – Ohio

I was detained concerning turning in threatening emails and 9/11, which would be considered civic duty. Instead, I was detained without probable cause and admitted to a psychiatric ER. Temporary custody of my children was removed. I was released with a dismissal and expungement order, and my forced informant status was made public causing stigma and harassment. Despite dismissal and expungement, custody proceedings were moved to Kentucky, where Ohio medical records were refused. I was forced to undergo another mental evaluation. Custody was withheld for seven months, during which officials openly discussed obtaining a diagnosis despite prior findings of no mental illness.

2011–2012 Incident – Kentucky

I called 911 seeking assistance to leave a residence safely with my child. Despite my report, I was arrested along with another individual. During release, courts allowed temporary custody of my child to be removed through false statements. I was subjected to an involuntary mental health petition and transported by an officer who bypassed the nearest hospital, driving recklessly at high speeds. I was admitted after a cursory evaluation and held without proper judicial review. In March 2012, permanent custody of my child was granted to a family member without proper notice or service of court documents, courts allowed family member seeking custody to serve legal notice when I was in the hospital involuntary. Courts used duplicate and recycled allegations of my forced informant status regarding 9/11 from 2005. I suspect 5 to 8, federal attorneys were present in the courtroom for child custody, on video transcript without explanation, in an area reserved for counsel and not on the docket, obstructing my ability to hear proceedings and caused undue stress and confusion, and the outcome. Their actions caused and helped create a situation for a future arrest with a fictitious warrant from a recycled/duplicate allegation with no legal justification.

**Recent Incidents:**

1. Oct 12th, 2024, Kentucky State Trooper, Cameron Whittaker, Badge # 395, Post # 09, Approximately 6:00pm, was parked and pulled out or drove from a remote area, with no line of sight to the intersection where Plaintiff was turning from a stop sign. After Plaintiff entered the roadway, the police vehicle approached within 2 to 3 seconds and was a short distance from Plaintiff's vehicle.

2. Trooper Whittaker followed Plaintiff for approximately 1.5 miles toward Plaintiff's residence before activating emergency lights. Plaintiff noticed and noted that Trooper Whittaker did not activate his emergency lights immediately upon beginning the follow, and this occurred in proximity to Plaintiff's residence.

3. At approximately 6:16 P.M. Plaintiff was stopped and placed under arrest based on what was described as an active warrant.

4. KSP Trooper Cameron Whittaker stated that the information did not specify the reason for the warrant when asked by Plaintiff. Plaintiff was handcuffed and transported without receiving any explanation of the basis for the arrest. During transport, approximately halfway to the detention facility, the KSP Trooper Cameron Whittaker verbally stated a description of what the warrant purportedly for.

   - **On Sept 18th, 2023, at 7:39 pm, "Before the Arrest", I purchased a firearm after passing and having a clean background check showing no warrant. I have receipt showing purchase with my personal information.**
   - **On Sept 23rd, 2024, at 7:02pm, "Before the Arrest", I purchased another firearm after passing a background check showing no warrant. I have receipt showing purchase with my personal information.**
   - **On Sept 18th, 2025, at 11:56am, "After the Arrest", I purchased another firearm after passing and having a clean background check, showing 'no warrant.' I have a receipt showing purchase with my personal**

information.)

5. During the arrest, Trooper Cameron Whittaker asked whether Plaintiff had a firearm, and Plaintiff responded yes. The firearm was left unsecured in Plaintiff's vehicle and was not inventoried or documented during booking. The intake form later provided to Plaintiff reflected that no firearm and no keys were listed as being taken into custody.

6. During this traffic stop and arrest, Plaintiff's vehicle was moved by Kentucky State Trooper Cameron Whittaker. During the encounter, Plaintiff observed the officer with Plaintiff's property and personal items. After the encounter Plaintiff noticed that a complete set of 4 spare house keys that had been present before the interaction were no longer there. Plaintiff's observation was that the keys were removed while the officer was in possession of Plaintiff's property and belongings.

7. During the arrest, Trooper Cameron Whittaker handed Plaintiff's regular daily set of house and vehicle keys to a third party without obtaining Plaintiff's consent or verifying whether the individual was authorized or related to Plaintiff.

8. KSP Trooper Cameron Whittaker placed Plaintiff in the car. The heat was on high, there was strong odors of cologne, vomit and exhaust fumes. I explained before getting in the car that I get carsick. Once inside the car explained he would roll the window down. Officer refused to roll window down when asked.

9. Trooper Whittaker displayed a man's photo and information on his Kentucky State Police in-car computer that was turned. Plaintiff could see screen from the backseat. It was there upon getting in car, and when we arrived at detention center. The male that was displayed on the screen was outside when Plaintiff was released from Pikeville Detention center. The man had been arrested on same charges that Trooper Cameron Whittaker verbally stated to Plaintiff.

10. During transport to Pikeville Detention Center, KSP Trooper Cameron Whittaker's decision to drive 115-117mph on a non-emergency transport created a substantial risk of serious injury or death. Because of this reckless conduct, Plaintiff feared for Plaintiff's life.

11. At approximately 7:00pm, Trooper Cameron Whittaker attempted to enter Plaintiff's information into the in-car computer system. Trooper Cameron Whittaker was unable to complete the entry on his own and had to request assistance from another Kentucky State Police trooper. Trooper Cameron Whittaker made the statement, "I can never get it to take that part and/or I have problems getting it to take that part."

12. A reasonable Kentucky State Trooper working for the Kentucky State Police would recognize that repeated failure of the system to accept information is an indicator of an issue with the arrest date or the underlying charge. Kentucky State Trooper (name unknown 1) acted with Trooper Whittaker in entering information into the in-car computer.

13. Pikeville Detention Center held Plaintiff for approximately 6 hours with no warrant.

14. Plaintiff had to speak to pretrial officer before being released with no representation.

15. During release a Pikeville Detention Center staff member discharged a taser multiple times to intimidate and harass.

16. Plaintiff received only a traffic citation, an intake form showing no keys or firearm were logged, and a release form with no bail required. There was no copy of a warrant upon release.

17. On or around 4 to 6 weeks after arrest, Plaintiff called several different Civil Rights Attorneys and noted dates and times along with responses.

18. Dec 17th, 2024, at approximately 9:00 am., Plaintiff appeared at Pike County District Court, Division II, for a matter described to Plaintiff as relating to a warrant. Plaintiff attended out of concern regarding prior law-enforcement actions.

19. The Pike County District Clerks office failed to issue required notices, filings, records associated with the proceedings, depriving Plaintiff of due process protections.

20. During the March 5, 2025 at approximately 9:00 am, Plaintiff had to appear in Pike County District Court, Division I, for traffic violations. During the hearing, prosecuting attorney distributed non-official printed materials and verbally instructed defendants not to purchase firearms or air guns, despite traffic violations not involving any firearm restrictions under Kentucky law. No judicial order or legal citation was provided to support this instruction which caused confusion and intimidation.

21. Additionally, Plaintiff attempted to present a muffler repair receipt relevant to the traffic allegation, but appointed defense counsel declined to submit or consider it. This prevented Plaintiff from presenting exculpatory documentation and contributed to a pattern of selective acceptance of evidence and procedural irregularities that impaired Plaintiff's ability to defend Plaintiff's self.

22. The Pike County District Clerks office failed to issue required notices, filings, records associated with the proceeding, depriving Plaintiff of due process protections.

23. On or around 1 to 4 months after the arrest in Oct 12, 2024, Plaintiff attempted to initiate a warrant for the arresting officer. On one of the several dates listed, between Dec 17, 2024, and Oct 17th, 2025, Plaintiff was on the sidewalk in Pikeville, Kentucky, attending legal matters due to arrest, a Kentucky State Police vehicle- possibly operated by the same officer Trooper Whittaker- drove at a high rate of speed so close to me that it created a substantial risk of harm and appeared intended to intimidate Plaintiff. Plaintiff has receipts and documentation confirming Plaintiff's presence and the Kentucky State Police vehicle in the exact location during the relevant time frame.

24. In June or July 2025, Plaintiff returned home and found the front door standing open. Upon checking the residence and vehicle, Plaintiff discovered that several items were missing, including materials related to ongoing legal matters and a spare vehicle key. During one of the incidents described above, Trooper Whittaker took a spare set of my house keys while he was moving my vehicle, which I personally witnessed. Several months later, Plaintiff's home was unlawfully entered without any signs of forced entry, and the intruders left the door open. During this break-in, Plaintiff's spare car key was also taken. The only set of keys unaccounted for were the ones taken by Trooper Whittaker, and these events form a continuous pattern of unlawful interference and harassment."

    Missing items were

    • The documentation of the arrest.
    • The muffler receipt.
    • Printout from prosecuting attorney on 3-5-25.
    • Notes from calling civil rights attorneys.
    • Spare car key.

25. On August 26, 2025, approximately 4:47 P.M., Plaintiff was outside recording, Plaintiff and her family were in the process of gathering information for a land survey. While Plaintiff was recording, the neighbor Ms. Bentley (2) approached and was going to cut the grass. Plaintiff explained the property belonged to Plaintiff's family. Ms. Bentley disagreed. When Plaintiff did not agree with Ms. Bentley that the property was theirs, Ms. Bentley suddenly moved toward the Plaintiff at a pace, stopping only inches away in a way that felt physically

threatening, and Plaintiff wasn't sure Ms. Bentley was going to stop. Plaintiff captured the entire interaction on video. Shortly after this confrontation, Ms. Bentley stated she was calling the police.

26. August 26th approximately 5:21pm, A Kentucky State Trooper, (name unknown 2), arrived at Plaintiff's neighbor's residence. The Trooper (name unknown) permitted the neighbors, Ms. Bentley, her sister Ms. Bentley and their mother Gladys Bentley, to come onto Plaintiff's property with Trooper (name unknown 2) which escalated the disagreement rather than de-escalating the situation. Plaintiff recorded portions of this interaction.

- Trooper (name unknown 2) moved and stood so close to Plaintiff that Plaintiff felt uncomfortable and had to move to the side more than once. Trooper (name unknown 2) stopped when Plaintiff turned my phone camera on him.

- Trooper (name unknown 2) made unnecessary steps toward Plaintiff.

- Plaintiff explained her family was getting things together for a land survey to settle the matter several times.

- KSP Trooper (name unknown 2), officer's actions appeared designed to provoke a confrontation, as he positioned himself to step forward repeatedly and closed the distance between us each time he spoke.

- Although Plaintiff cannot speak to what the officer intended, the way he carried himself and the manner in which he approached Plaintiff, gave the impression that he was performing for an audience or acting in a way that would be seen or approved by others within his department. Considering the long history of irregular actions involving past county matters, the situation felt consistent with an ongoing pattern in which certain individuals act with confidence that their conduct with be backed or overlooked by others. When speaking the KSP Trooper made several abrupt and exaggerated hand movements. KSP Trooper's (name unknown 2), specific hand gestures, which resembled several signals Plaintiff recognized prior interactions with people Plaintiff knew in law enforcement, gave the appearance of a silent or coded message directed at Plaintiff. While Plaintiff cannot know his intent, the gestures felt connected to Plaintiff and others Plaintiff knew, and their timing and manner made the encounter feel targeted.

- As the KSP Trooper (name unknown 2) began leaving with the women who had accompanied him, his behavior and tone gave the impression that he was asserting authority over Plaintiff regardless of whose property Plaintiff was standing on. Even though Plaintiff was on Plaintiff's own mother's land, the officer looked at Plaintiff and said, "you can go back over there,". While Plaintiff cannot speak to his intent, the way the statement was delivered, combined with the earlier physical positioning and gestures, made the interaction feel deliberate and dismissive of Plaintiff's rights on the property.

27. October 14th, 2025, approximately 1:24 p.m. Request: Plaintiff mailed a request for Open Records seeking computer queries, dispatch logs, CAD logs, audit logs, audit logs state-wide, body and dash cam video for KSP Trooper Cameron Whittaker on Oct 12, 2024. Plaintiff also requested the intake and release video from the Pikeville Detention center for October 12, 2024.
Response: On Oct 24, appx. 4:13 p.m. Kentucky State Police denied my request, only granting 2 citations. KSP are claiming:

- ○ No body-cam footage exists
- ○ No dash-cam footage exists
- ○ No CAD report exists
- ○ No dispatch logs exist
- ○ No audit logs will be released
- ○ Only two citations exist
- ○ Any video that did exist would have been destroyed after 30 days.

28. On Oct 17th, 2025, Plaintiff requested from Pikeville District Court Clerk's Office transcripts for three court dates: December 17th, 2024, March 5th, 2025, and March 7th, 2012. Plaintiff sought these records to confirm what had occurred during the proceedings and to determine whether any documentation had been provided at the time of the hearings.

    Response: On Oct 21st or 22nd, 2025 According to the information provided by the Clerk's Office, only two of the requested dates- December 17th, 2024, and March 7th, 2012, had been recorded. The Clerk's Office reported that there was no recording available for March 5th, 2025, traffic-court appearance.

29. On Oct 22nd, 2025, Request: Plaintiff mailed request to Open Records for body cam footage of Kentucky State Police Trooper, name unknown, for the date of Aug 26, 2025.

    Response: Oct 29, 2025, KSP stated they had no responsive records and could not locate any video, logs or documentation for that date.

30. On November 7, 2025, approximately 3:09 p.m., Plaintiff was in town. Ms. Bentley (from the land dispute, 50 Big Shelby Creek Rd.) entered the same store immediately after Plaintiff did. Plaintiff has phone video of this interaction. Inside the store, the neighbor positioned herself in the aisle in a way that required Plaintiff to stop so she could move down the aisle and say "sorry" to get Plaintiff's attention in order to move past Plaintiff. Plaintiff interprets this as Ms. Bentley was following her.

31. Prior to November 8th, 2025, incident, Plaintiff had discussed emergency-preparedness plans with others, including how family members would evacuate the area in the event of a flood. Plaintiff stated that, during such an evacuation, the family already in vehicles in route could slow down in front of a friend's house and they could just quickly climb into the back of the truck.

    On November 8th, 2025, Cody Bentley arrived at Plaintiff's worksite and remained on the property for approximately nine minutes, which is significantly shorter than the typical one-to-eight-hour duration of worksite visits. During this time, Cody Bentley made a statement that he could "gut a deer in 12 minutes," while looking at Plaintiff's chest while he spoke, instead of looking at Plaintiff's face. Cody Bentley displayed a 'bloody deer's carcass' as if it were trying to climb into the back of his truck. Plaintiff perceived the display and the comment as referencing the earlier evacuation discussion and interpreted the conduct as threatening. Plaintiff's worksite entry log confirms the individual's presence during the time noted.

32. On December 1st, 2025, at 4:25pm, Cody Bentley and Bob Bentley arrived at Plaintiff's worksite shortly after plaintiff had previously discussed the November 8th incident with coworkers. Plaintiff states that one of the individuals was the same person involved in the earlier worksite incident. Both individuals requested entry onto the property.

    Plaintiff informed them that entry was restricted and limited only to three individuals listed by the worksite supervisor, and that their names were not included on the authorized-access list. The individuals laughed at this response and remained briefly on the property before they leaving the property at 4:28pm.

33. About one to four months prior to December 1st, 2025, Plaintiff arrived home and found Ronald Vipperman parked in front of her residence. Plaintiff explained she didn't want him to park there, that it was disturbing. He refused to leave and was around half hour or hour before he left that night.

    Dec 1st, 2025, at approximately 5:55pm, Plaintiff arrived home to find Ronald Vipperman's truck parked in front of residence. A few hours later, Ronald Vipperman positioned his truck, so his headlights were shining through Plaintiff's bedroom window and revved his engine. Plaintiff called family and explained there might be trouble. Plaintiff's mother and son pulled over to let Ronald Vipperman know he was disturbing Plaintiff.

Later Ronald Vipperman moved his vehicle and turned his lights off and started pulling slowly down through the neighbor's yard, toward the back of Plaintiff's home. Plaintiff's mother came out and fired a warning shot.

At approximately 12:04am on December 2, 2025, plaintiff contacted 911.  At around 12:22 a.m. a Kentucky State Police vehicle pulled in with emergency lights on, Plaintiff states that the Trooper Culbertson got out and stood at the side of the truck. Plaintiff states that Trooper Culbertson and Ronald Vipperman were positioned together during the interaction. From inside Plaintiff's residence, Plaintiff heard Trooper Culbertson call out the words "turn around" loudly enough for the Plaintiff to hear. Plaintiff perceived the statement and the circumstances of the encounter as unusual and concerning. Plaintiff states that she heard a gunshot after hearing Trooper Culbertson call out the word's "turn around", Trooper Culbertson a second time called out loudly enough for Plaintiff to hear, "turn around', and then Plaintiff heard a second gunshot. Plaintiff observed Ronald Vipperman being pulled across the ground while lying on his back by Trooper Culbertson. Plaintiff stopped recording when seeing this.

A second Kentucky State Trooper arrived along with a tow truck. Plaintiff states that neither officer contacted Plaintiff about what action to take at that point.

Plaintiff possesses video evidence documenting the incident. Additional witnesses exist, but due to safety concerns their identities will be disclosed during discovery if necessary.

Plaintiff reserves the right to amend or supplement this complaint as additional facts become known through discovery or further investigation."

## Tolling and Continuing Violation Argument

Plaintiff alleges that Defendants and individuals acting in concert engaged in a continuing course of conduct from October 12th, 2024, through at least December 2025, and acted under Color of Law, including unlawful detention, intimidation, false arrest under color of law, harassment, excessive force, potential kidnapping under color of law, due process, selective acceptance, unsafe release, Invasion of Privacy/Intrusion Upon Seclusion, reckless endangerment, and interference with plaintiff's legal rights. These acts were connected, shared a common purpose, and were intended to retaliate against Plaintiff for exercising constitutional rights.

The continuing violation doctrine applies because:

1. Defendant's misconduct did not end with the initial arrest from the recent incidents; it persisted through repeated harassment, intimidation, and obstruction of Plaintiff's attempts to obtain evidence.
2. Plaintiff experienced ongoing harm, including threats at Plaintiff's residence and workplace, and denial of access to court records.
3. The most recent acts occurred within the limitations period, making all related acts actionable.

Accordingly, the statute of limitations should run from the last act in this series, not the initial arrest date.

## Spoliation and Bad Faith

Plaintiff further alleges that Defendants and associated agencies engaged in spoliation of evidence and bad faith conduct, including but not limited to:

1. Citation stating "video available" while Kentucky State Police later claimed
   o No body-cam footage exists

- o  No dash-cam footage exists
- o  No CAD report exists
- o  No dispatch logs exist
- o  No audit logs will be released
- o  Only two citations exist
- o  Any video that did exist would have been destroyed after 30 days.

2. Missing court hearing video, confirmed by the clerk as an unusual deviation from standard procedure.

These failures to preserve or produce evidence deprived Plaintiff of transparence and accountability, further violating Plaintiff's rights under the First, Second, Fourth, Eighth, and Fourteenth Amendments.

Plaintiff requests that the Court consider these acts in determining liability and damages and impose appropriate sanctions or adverse interferences against Defendants.